UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DENISE E. LONSDORF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-CV-1868-ERW |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Denise Lonsdorf ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 19) and Defendant has filed a brief in support of the Answer (ECF 25).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on April 26, 2013 (Tr. 97-99). Plaintiff was initially denied relief on July 29, 2013, and filed a Request for Hearing before an Administrative Law Judge ("ALJ") on August 30, 2013 (Tr. 111). After two hearings, by a decision dated August 19, 2015, the ALJ found Plaintiff was not disabled (Tr. 20-32). Plaintiff filed a *Request for Review of Hearing Decision* on September 12, 2013 (Tr. 9). On October 5, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Plaintiff appealed to the United States District

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Court for the Eastern District of Missouri on May 10, 2017 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and Plaintiff has not engaged in substantial gainful activity since March 5, 2013, the alleged onset date of her disability (Tr. 22). The ALJ found Plaintiff has the severe impairments of cervical disc bulging and osteophyte complex at C5-6, fibromyalgia, irritable bowel syndrome, postural orthostatic tachycardia syndrome, depression (not otherwise specified), generalized anxiety disorder, social anxiety disorder, and cluster B personality traits. The ALJ found no impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23).

In her testimony before the ALJ on January 29, 2015, Plaintiff, who was represented by counsel, testified she was 39 years old, had completed two years of college, and her last date of work was in February 2013 after she was terminated by the Dog Spa for missing a week of work (Tr. 42-44). Plaintiff then filed for unemployment following her termination but did not receive any unemployment benefits (Tr. 43). Prior to her termination at the Dog Spa, Plaintiff worked in a mailroom for three years, as a parts clerk for two years, and as a pet groomer at Petco and Petsmart for a total of five years (Tr. 44-47). Plaintiff was also promoted to grooming manager at Petco for a period of three months (Tr. 47). Plaintiff testified she takes a series of medications including medication for shaking, fibromyalgia, depression, pain, sleeping, psoriasis, allergies, and hormone replacement (Tr. 47-52). Plaintiff had a back surgery prior to 2009 and still experiences pain in her back and nerve damage in her right leg as a result of the surgery (Tr. 53).

Plaintiff testified she spends most of her day reclining and engaging in sedentary activities because of pain in her tailbone (Tr. 58).

A supplemental hearing was conducted on July 29, 2015, after additional medical records were added by the ALJ to Plaintiff's file (Tr. 71). A psychological medical expert, Dr. Kravitz, testified Plaintiff has been diagnosed with depression, generalized anxiety disorder, social anxiety, and cluster B personality traits (Tr. 72-73). Dr. Larry Kravitz also testified Plaintiff's social limitations are primarily due to her pain, and that her anxiety and depression are secondary to her pain (Tr. 74). During the hearing, Plaintiff's counsel asked Dr. Kravitz if he believed any improvement in Plaintiff's physical problems would improve her psychological problems. (Tr. 76-77) Dr. Kravitz indicated an improvement in Plaintiff's physical problems would probably decrease her mental impairments because pain is generally intrusive in people's lives (Tr. 76-77). Finally, Plaintiff testified she spends two or three days a month, primarily confined to her bed as a result of her mental and physical impairments (Tr. 78).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the RFC to perform sedentary work except that she can occasionally climb ramps and stairs, stoop, kneel, and crouch (Tr. 25). Plaintiff can never climb ladders, ropes, or scaffolds, or crawl, and should avoid all exposure to hazards such as unprotected heights and dangerous machinery. *Id.* The ALJ found Plaintiff is unable to perform any past relevant work[2] but she can perform simple, routine tasks in an environment where there is only occasional contact with others (Tr. 25).The ALJ found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including patcher and touch-up screener (Tr. 32, 80). Thus, the ALJ's conclusion for Plaintiff was "not disabled." *Id.* Plaintiff appeals, arguing the

---

[2] As noted above, Plaintiff's past relevant work includes work as a mail room clerk, pet groomer and parts clerk (Tr. 31).

3

ALJ failed to properly consider pain and insomnia as severe impairments, failed to properly consider the combination of Plaintiff's physical and mental impairments, and failed to properly consider the credibility of the Plaintiff (ECF 19).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* 'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three main issues. First, Plaintiff asserts the ALJ erred by failing to properly consider chronic pain and insomnia as

6

severe medically determinable impairments at Step 2 of the sequential evaluation (ECF 19 at 3-4). Second, Plaintiff argues the ALJ failed to properly consider Plaintiff's physical and mental impairments in combination (ECF 19 at 6). Third, Plaintiff contends the ALJ failed to properly consider the credibility of Plaintiff's testimony regarding her perception of pain and her mental condition (ECF 19 at 11). For the following reasons, the Court finds Plaintiff has failed to carry her burden of proof and the ALJ's decision is based on substantial evidence.

### A. Failure to properly consider chronic pain and insomnia.

Plaintiff asserts the ALJ failed to properly consider chronic pain and insomnia as severe medically determinable impairments at Step 2 of the evaluation (ECF 19 at 3-4). At Step 2, the ALJ must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921. While Plaintiff has the burden of showing a severe impairment that severely limits her physical or mental ability to perform basic work activities, the burden "is not great." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001).

During Step 2 of the ALJ's evaluation, the ALJ found Plaintiff has the severe impairments of cervical disc bulging and osteophyte complex at C5-6, fibromyalgia, irritable bowel syndrome, postural orthostatic tachycardia syndrome, depression (not otherwise specified), generalized anxiety disorder, social anxiety disorder, and cluster B personality traits, but no impairment or combination of impairments that meets or medical equality the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23). The ALJ did not indicate that either chronic pain or insomnia was a severe impairment.

### i. Pain as a severe medically determinable impairment.

Plaintiff uses definitions of pain and chronic pain from WebMD and MedlinePlus to argue pain should have been determined to be a severe medically determinable impairment at Step 2 of the evaluation (ECF 19 at 4). However, pain itself cannot be a medically determinable impairment since it is a symptom of other medically determinable impairments. The regulation outlines "impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit your ability to meet certain demands of jobs." 20 C.F.R. § 404.1569a(a). Under Title II of the Social Security Act, "[a] 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment." Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). Under the Social Security guidance, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." *Id.*

The medical records reflect Plaintiff suffers from chronic pain. Plaintiff's complaints of chronic pain and the complete medical records were considered by the ALJ, however, pain itself cannot be a medically determinable impairment and therefore would not be listed under Step 2 of the ALJ's evaluation (Tr. 589, 591-596, 602, 732, 738, 803-807). Additionally, the ALJ did find the medical impairments which caused Plaintiff's pain, including fibromyalgia, depression, and anxiety to be severe impairments (Tr. 22).

### ii. Insomnia as a severe medically determinable impairment

Plaintiff also argues insomnia should have been determined to be a severe medically

determinable impairment but does not cite to any specific additional argument supporting the contention (ECF 19 at 4). For the same reasons outlined above, insomnia is merely a symptom of Plaintiff's other medically determinable impairments and therefore cannot be a determinable impairment on its own. Insomnia is a symptom of other impairments Plaintiff was determined to have including fibromyalgia, depression, and generalized anxiety disorder but because insomnia is a symptom it cannot be a severe medically determinable impairment. *See* Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996).

    **B. Physical and emotional pain are interconnected and should have been considered in combination.**

    Plaintiff contends the ALJ improperly failed to consider the interconnectedness of Plaintiff's physical and emotional pain (ECF 19 at 5). Plaintiff argues the failure when determining Plaintiff's Residual Functioning Capacity ("RFC") changed the outcome of her claim and is therefore reversible error (ECF 19 at 6-7). The ALJ is "obligated to consider the combined effects of [Plaintiff's] numerous physical impairments as well as her mental impairments." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). When a claimant asserts multiple impairments, the ALJ "shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" when "determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility."42 U.S.C. § 1382c(a)(3)(F) (1988); 20 C.F.R. § 404.1523 (1990). "[T]he fact that each impairment standing alone is not disabling does not conclude the inquiry into whether an applicant is disabled. The ALJ must consider the impairments in combination and not

fragmentize them in evaluating their effects." *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991).

However, in this case, the ALJ did not fail to consider the interconnectedness of Plaintiff's claims, but rather provided a detailed analysis outlining each of Plaintiff's severe medical impairments, her symptoms, and how the combination of these things affected Plaintiff's ability to work. The ALJ considered the symptoms of Plaintiff's physical and mental impairments, including her pain and trouble sleeping, in her RFC analysis. The ALJ then provided good reasons supported by substantial evidence to further explain her conclusion that that the alleged symptoms were not as limiting as alleged (Tr. 25-31). "When a disability benefits claimant has combination of impairments, administrative law judge (ALJ) is required to consider combined effect of all impairments in making determination of disability; consideration of combined effects of claimant's impairments is shown when each is separately discussed in ALJ's decision, including discussion of claimant's complaints of pain and level of daily activities." 20 C.F.R. §§ 404.1520(a), 404.1523; *Smith v. Chater*, 959 F.Supp. 1142 (W.D. Mo. 2007). In the present case, the ALJ evaluated each impairment and discussed Plaintiff's complaints of pain and level of daily activities.

First, the ALJ first made her determinations regarding Plaintiff's medically determinable impairments and then proceeded to indicate whether or not those impairments, or a combination of them, meets the severity requirements in 20 CFR 404, Subpart P, Appendix 1. The ALJ then evaluated the entire record and determined that the Plaintiff has the residual functioning capacity to do sedentary work (Tr. 25). When making this determination, the ALJ considered Plaintiff's symptoms, including chronic pain, and the extent to which that pain is consistent with medical and other evidence. *Id.* Plaintiff claims her alleged disability began on March 5, 2013 (ECF 19 at

2). The ALJ considered numerous medical records which noted Plaintiff's complaints about pain. On March 29, 2012, Plaintiff visited a pain clinic and received trigger point injections as well as a directive to continue to take her pain medication cocktail and attend physical therapy for pain related to her fibromyalgia (Tr. 344-346). Fourteen days later, Plaintiff returned to the same clinic with increased pain complaints and received a selective nerve root injection as well as complaints about depression and anxiety (Tr. 347-349). Two weeks later, Plaintiff returned to the same clinic where improvement in the overall reported pain score and marginal relief were noted (Tr. 350). By May 2, 2012, Plaintiff returned to the same pain clinic with a report that her pain was better (Tr. 353). Plaintiff returned to the same clinic in June, July, and August 2012 with both increasing and decreasing complaints of pain and changing conditions of her mood (Tr. 359-367).

Plaintiff indicates she was terminated from her job as a pet groomer on August 28, 2012 (Tr. 12). She then took a position in October 2012 as a pet groomer with a different company (Tr. 12). She was terminated from that position on March 5, 2013, the same day of alleged onset of her disability (Tr. 12). Plaintiff filed for unemployment from September 1, 2012 to October 6, 2012, and again on March 5, 2013, after her second termination (Tr. 14). After reviewing the above medical records and noting them in her opinion, the ALJ find that the medical records do not detail any substantial injury or increase in her symptoms as of the alleged onset date of March 5, 2013 (Tr. 27). This Court agrees. Records from the North Central Community Health Center indicate that on March 15, 2013, Plaintiff sought to establish care and noted anxiety and depression as well as pain (Tr. 477-479). These records do not indicate any substantial injury or increase in symptoms within ten days of her alleged onset date. Records after the alleged onset date, as late as October 2014, indicate Plaintiff did not indicate she suffered a significant

11

symptom increase but rather that she experienced involuntary movements that did not interfere with her activities of daily living (Tr. 490-492). By October 9, 2014, Dr. Robert Baird at the North Central Community Health Center indicated that Plaintiff needed to exercise more to help with her fibromyalgia (Tr. 491). Only after reviewing all of the above medical records and considering Plaintiff's testimony, and the testimony of both experts, did the ALJ determine Plaintiff is not "disabled."

During the supplemental hearing, the ALJ brought in a medical expert in psychology, Dr. Kravitz, to clarify Plaintiff's mental health impairments (Tr. 72-73). The ALJ asked Dr. Kravitz whether Plaintiff's mental health impairments "taken singly or in combination" meet a listing under 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 75). Dr. Kravitz indicated they did not (Tr. 75). Following the ALJ's questioning, Plaintiff's attorney asked Dr. Kravitz about Plaintiff's belief that "if her physical problems resolved, her psychological problems would improve dramatically" (Tr. 76). Dr. Kravitz responded indicating that individuals who experience chronic pain, like Plaintiff, tend to have mental issues as a result, and the treatment of the pain can help resolve the mental issues (Tr. 75-76). The ALJ then considered the testimony presented in the hearing to render a decision. Specifically, the ALJ noted in her opinion where Dr. Kravitz, "added that if the claimant's physical problems improved, her psychological problems would dramatically improve" and that her "pain was a very intrusive experience in the [Plaintiff's] personal life and caused [Plaintiff's] difficulty adjusting" (Tr. 30).

Plaintiff contends the ALJ should have determined if it was necessary for Plaintiff to use a cane for ambulation and the effects of the use of that cane (ECF 19 at 8). The ALJ did evaluate the use of the cane. The ALJ noted Plaintiff's 2009 records note she had a discectomy and from that time she used a cane for ambulation (Tr. 26). While the history of the use of cane is not

noted in the medical records, the ALJ did evaluate the impact the cane had on Plaintiff in noting that Plaintiff continued to work from 2009-2012 earning more than substantially gainful activity even after the use of the cane (Tr. 26). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir. 2001). When evaluating Plaintiff's health impairments, the ALJ considered Plaintiff's use of the cane and her spinal impairments using the fact of her employment from 2009-2012. *Id.* In this instance, while the ALJ did not have additional records regarding Plaintiff's use of a cane, the ALJ did consider the provided medical records, and Plaintiff's work history. The evidence considered by the ALJ provided a sufficient basis on this issue to make a decision.

Plaintiff also contends that the ALJ did not evaluate Plaintiff's need for a service dog to stabilize her and therefore the ALJ's failure to evaluate Plaintiff's need constitutes incomplete analysis and requires remand. This Court disagrees. Plaintiff testified the dog was a family pet for five years and she only started training him to be service dog in the preceding four or five months (Tr. 60). Plaintiff also testified that one of things her service dog does is stabilize her as a result of her limp (Tr. 53). An October 2014 note from Dr. Baird does indicate Plaintiff has a chronic painful condition and that she would benefit from a service dog (Tr. 482). However, the medical records make no mention of the dog's alleged usefulness in ensuring stability for Plaintiff. Any reversal as a result of the ALJ failing to develop the record would only be warranted when such failure is unfair or prejudicial. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). In this case, the ALJ did note the presence and assistance the service dog provides for Plaintiff in her opinion. Therefore, any failure by the ALJ to evaluate the dog's necessity for stability was harmless and does not rise to the level of being either unfair or prejudicial.

In the present case, the ALJ did not fail to consider the interconnectedness of Plaintiff's claims, but rather, as *Smith* outlines, provided a detailed analysis outlining each of Plaintiff's severe medical impairments, her symptoms, and how the combination of these things affected the Plaintiff's ability to work. The ALJ noted in her opinion she "considered pain as an additional, non-exertional limitation" and determined Plaintiff's records do not indicate the "combination of physical impairments is severe enough to preclude her from performing" work in the national economy (Tr. 29). Plaintiff argues the ALJ's statement shows she separately considered the combination of physical impairments and mental impairments. However, the ALJ found Plaintiff's combination of her mental impairments or her physical impairments were "severe enough to preclude her from performing all work available in the national economy" (Tr. 30). Requiring a "more elaborate articulation of the ALJ's though processes would not be reasonable." *Browning v. Sullivan*, 958 F.2d 817 (8th Cir. 1992). There is substantial evidence in the hearing record as a whole to support the ALJ's conclusion that Plaintiff's mental and physical impairments are not disabling.

### C. The ALJ failed to properly consider credibility.

Plaintiff asserts the ALJ failed to properly consider the credibility of Plaintiff when making an ultimate determination regarding her RFC (ECF 19 at 11). Plaintiff argues the ALJ's failure to consider facts related to Plaintiff's credibility and the ALJ's mischaracterization and misstatement of certain evidence is cause for remand because it is not based on substantial evidence. (ECF 19 at 12-13).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). "We defer to the ALJ's evaluation of [a claimant's] credibility, provided such determination is 'supported by good

reasons and substantial evidence, even if every factor is not discussed in depth.'" *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). In this case, the ALJ detailed Plaintiff's testimony from the January and July 2015 hearings:

> The claimant testified at the January 29, 2015 hearing as set out in this paragraph. She formerly worked as a service representative and a pet stylist, and she last worked in February or March of 2013. Her employer could not accommodate her disabilities. The claimant had a 1999 hysterectomy, and she has significant pain in her lower back and nerve damage in the right leg. The claimant described fibromyalgia-related flaring mostly in her hands and anxiety as symptoms, and she stated she has upper extremity shaking. She has received epidural injections, but she has not been able to recently afford them. She spends 80 percent of the day reclined. She has been diagnosed with postural tachycardia syndrome, and had a heart monitor installed. She had irritable bowel syndrome, but at her hearing, she testified that impai1ment was controlled. The claimant has panic attacks, and she sees a psychiatrist once per month, on average and a counselor weekly. She testified her panic attacks occur once per week and can be triggered by claimant proximity to people she does not know or being in crowds. She takes Propranolol, Xanax, and she has taken Celexa, Wellbutrin, Tramadol, Thorazine, and skin cream for her psoriasis. The claimant testified she has memory issues. She is able to do housework for 20 minutes at a time before she requires a 30-60 minute respite. The claimant brought a service dog to this hearing, and the claimant testified the dog goes with her wherever she goes and has for the past five years. The claimant filed for and received unemployment benefits after her alleged onset date.
>
> I allowed the claimant's attorney to [] supplement the record with any additional claimant testimony during the latter claimant hearing on July 29, 2015. The claimant testified then that she experiences depression and despondency and that at times it has been severe enough to confine the claimant to her room or bed for a day or longer at a time. She added that in conjunction with the physical symptoms she might require two or three days confined to her room or bed per month (Tr. 26).

Following the above summary of Plaintiff's testimony, the ALJ proceeds to detail the records she evaluated when determining Plaintiff's claims regarding her spinal impairments. The ALJ determined because Plaintiff claimed disability starting in March 2013, after having worked in the four preceding years and her MRI records had indicated no change since her 2009 discectomy, Plaintiff's testimony regarding her allegation of spinal impairment disability was not entirely credible (Tr. 26). The ALJ then goes on to state that she "can give little weight to the [Plaintiff's] testimony regarding the limitations presented by her physical and mental

15

impairments" after having reviewed all of Plaintiff's medical records, testimony, as well as both of the expert's testimony (Tr. 30).

Plaintiff contends because she did not actually receive unemployment benefits, and the ALJ noted that she had, the ALJ should be reversed. In her opinion, the ALJ stated, "I also note that claimant testified she applied for and received unemployment benefits. To do so, the claimant must assert to the state that she is ready, willing, and able to work" (Tr. 30). The operative point the ALJ is asserting is Plaintiff's contention that she has been disabled since the alleged onset date is inconsistent with Plaintiff's own testimony that she did apply for unemployment following her termination from the Dog Spa on March 5, 2013 (Tr. 43). Plaintiff did not testify she received unemployment benefits (Tr. 43). The ALJ used Plaintiff's assertion that she was "ready, willing, and able to work" following her March termination as justification for giving little weight to Plaintiff's testimony about the severity and limitations of her disability (Tr. 30). Ultimately, the ALJ found that Plaintiff's impairments could reasonably cause some of her symptoms but the intensity, persistence and limiting effects of the symptoms were not entirely credible (Tr. 31).

Plaintiff also contends that the ALJ noted Plaintiff required a scooter to travel long distances but in reality it was Plaintiff's father that required the scooter (Tr. 30, 59). This misstatement by the ALJ was not material and if anything, bolstered Plaintiff's claims that she could no longer work. Deficiencies which have "no practical effect on the outcome of the case" are not a sufficient reason to set aside the ALJ's finding. *Senne*, 198 F.3d at 1067. There is no indication the correction of this fact would have a practical effect on the outcome of the case and therefore is not reversible error.

Ultimately, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). "We defer to the ALJ's evaluation of [a claimant's] credibility, provided such determination is 'supported by good reasons and substantial evidence, even if every factor is not discussed in depth.'" *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). In the present case, the ALJ's evaluation of Plaintiff's credibility is supported by good reasons and substantial evidence. Any misstatement with regards to Plaintiff's use of a scooter or receiving unemployment benefits had no practical effect on the outcome of the case and is therefore harmless.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of November, 2018.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**